## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAHQUILL JOHNSON.,                           )
                                             )
                        Plaintiff,           )
                                             )
            vs.                              )        Civil Action No. 3:24-cv-194
                                             )        Judge D. Brooks Smith
LAUREL HARRY, *et al.*,                      )
                                             )
                        Defendant.           )


## MEMORANDUM and ORDER OF COURT

Plaintiff Jahquill Johnson filed a *pro se* complaint against thirteen defendants, asserting numerous causes of action. Defendants filed three separate motions to dismiss. The first filed motion to dismiss filed was brought by Ryan Dobo, a public defender who represented Johnson in connection with a separate criminal proceeding stemming from Johnson's assault upon a corrections officer. That motion is now ripe for adjudication. For the reasons set forth below, I will grant Dobo's motion to dismiss. I will also allow Johnson 30 days to oppose the remaining motions to dismiss, if he chooses to do so. He may, during that time, amend his allegations against Dobo—again, if he chooses to do so.

## I. Factual Background[1]

For the purposes of a motion filed under Federal Rule of Civil Procedure 12(b)(6), we accept as true all well-pleaded facts in a plaintiff's complaint. *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010). Johnson alleges the following: Jahquill Johnson is an inmate who was incarcerated) at SCI-Houtzdale and placed in its Restricted Housing Unit ("RHU"). Johnson was moved to the RHU following his assault upon a corrections officer. ECF No. 6 ¶ 74. On August 15, 2023, Johnson returned to his cell after attending a preliminary hearing on charges arising out of that assault. He was then served lunch. *Id.* ¶¶ 14-15. As he ate his meal, he experienced a burning sensation in his mouth. *Id.* ¶¶ 17-19. He spit out food that was in his mouth, only to find pieces of razor blades among the food. He alleges they were placed there by corrections officer Buskirk. *Id.* Johnson, despite receiving multiple threats of retaliation, as well as harassment in the form of racial slurs and encouragement that he commit suicide, filed a grievance regarding the food incident. *Id.* ¶¶ 18-37.

Johnson alleges that he continued to experience retaliation even after filing his grievance. He responded by going on a hunger strike. *Id.* ¶¶ 45-49. The hunger strike led Dr. Bloom, a psychologist at SCI-Houtzdale, along with Sean Bresnahan,

---

[1] Given the posture of this case, the Court's only substantive ruling at this juncture concerns Defendant Dobo's motion to dismiss. As such, this statement of facts focuses primarily on the allegations concerning Defendant Dobo.

the facility's Licensed Psychology Manager, to discontinue Johnson's psychiatric medication, purportedly to prevent uncomfortable side effects. *Id.* ¶ 52; ECF No. 6-1, Ex. D at 3.[2] Johnson's medications, however, were not reinstated following cessation of his hunger strike. ECF No. 6 ¶ 52. Dr. Bloom is also alleged to have refused Johnson a psychiatric evaluation because of Johnson's "behavior." *Id.* ¶ 76.

In November 2023, Defendant Dobo, a public defender representing Johnson in his assault proceeding, visited Johnson at SCI-Houtzdale. He was escorted to Johnson's cell by three SCI-Houtzdale employees—defendants Reifer, Morrison, and Buskirk. *Id.* ¶¶ 53-54. Reifer instructed Buskirk to stand within earshot of Johnson's cell while Dobo spoke with Johnson through his cell door. *Id.* ¶¶ 53-54. According to Johnson, Dobo was not on Johnson's "visiting list" and thus should not have been permitted to visit his cell. *Id.* ¶ 55. However, as averred in the complaint, multiple staff members stated that Dobo visited Johnson to see if he would attend a court hearing scheduled for that day, or if he instead refused to leave his cell.[3] *Id.* ¶¶ 57-60. Johnson does not allege in his complaint having discussed any privileged matter with Dobo during his visit, nor does he affirmatively state the reason for

---

[2] In deciding a motion to dismiss, the court may rely on exhibits attached to the complaint if the complaint's claims are based upon those documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[3] A grievance filed by Johnson and attached to his complaint as Exhibit E claims that Dobo was there to discuss strategy. ECF No. 6-1, Ex. E. The purpose of Dobo's visit has limited relevance—if any—to Johnson's claims.

Dobo's visit. Regardless of the reason for the visit, Johnson allegedly agreed to attend his scheduled court hearing and requested that he be taken to court. *Id.* ¶ 61. Dobo and Reifer, however, refused Johnson's request for transportation to court. *Id.* This refusal, Johnson contends, "resulted in [P]laintiff being forced to take a guilty plea" in the criminal prosecution. *Id.* ¶ 62.

Johnson also alleges that SCI-Houtzdale officers restricted his access to mail concerning ongoing legal matters. In May 2024, Defendant Gallaher confiscated Plaintiff's mail concerning a Post-Conviction Relief Act petition he had filed. *Id.* ¶ 62. Plaintiff filed a grievance and was told that his mail was returned to sender; however, his "inmate correspondence history" stated that the mail was "rejected by security." *Id.* ¶¶ 64-65. That confiscation, according to Johnson, impeded him from filing a timely response to his lawyer's *Finley* letter.[4]  *Id.* ¶ 64.

Johnson maintains that, two weeks later, Gallaher refused to open his legal mail unless Johnson agreed to sign off on an earlier grievance he had filed. *Id.* ¶ 66. Johnson refused. Gallaher then left the room, leaving behind the "legal mail log." *Id.* at ¶¶ 67-68. This led to Gallaher issuing Johnson a misconduct which stated that, despite having received multiple orders to do so, Johnson refused to return the legal

---

[4] A *Finley* letter is filed when "a PCRA petitioner's counsel determines that the case contains no issue of arguable merit." *Sheaffer v. Chesney*, No. CIV.A.02-1294, 2003 WL 22100871, at *2 n.2 (E.D. Pa. Aug. 14, 2003); *see Commonwealth v. Finley*, 550 A.2d 213 (Pa. 1988).

mail log. *Id.* ¶ 69. Later, when reviewing a copy of his correspondence history, Johnson saw that the entry for his legal mail was changed from "confiscated" to "rejected by mail room." *Id.* ¶ 72.

Finally, Johnson makes several allegations concerning the conditions of his confinement at SCI-Houtzdale's RHU. Johnson was first moved to the RHU on May 4, 2023. *Id.* ¶ 85. While the exact end date of Plaintiff's confinement at the RHU does not appear in the record of this case, Johnson alleges that he was scheduled to remain there until December 22, 2024. *Id.*

On February 28, 2025, Johnson filed a Notice of Change of Address, stating that he had been transferred to SCI-Fayette. ECF No. 37.

## II. Procedural Background[5]

Johnson filed his *pro se* complaint on August 28, 2024. ECF No 6. The complaint names thirteen defendants and asserts federal claims under 42 U.S.C. §§ 1983, 1985-1986, for violations of the First, Sixth, Eighth, and Fourteenth Amendments. In addition, Johnson alleged a violation of the Americans with Disabilities Act, along with state law claims of negligence, assault and battery,

---

[5] Prior to this decision, this Court had not yet ruled on any of the motions pending in this case apart from Johnson's motion for a temporary restraining order and preliminary injunction. ECF Nos. 21, 51. Because many of the below-described motions are now being ruled upon, my description of procedural history will be relatively in-depth.

"failure to protect, failure to train, failure to supervise, and [failure to] discipline."
ECF No. 6 at 1-2, ¶¶ 2-14.

Making the task before me more difficult than I would prefer, Johnson fails to specify which claims are brought against which defendants. Defendants filed three motions to dismiss. The first, on behalf of Defendant Dobo—Johnson's assigned public defender—was filed on November 18, 2024. ECF Nos. 17, 18. The second, a partial motion to dismiss filed on November 25, 2024, was submitted on behalf of eleven defendants: Laurel Harry, Lucas Malishchak, Scott Klenfelter, David Close, Rebecca Reifer, Sean Bresnahan, P.S.S. Olbert, P.S.S. Fresko, C.O. Buskirk, C.O. Morrison, and C.O. Gallaher ("Corrections Defendants"). ECF Nos. 19, 20. The third, on behalf of Defendant Bloom, was filed on January 6, 2025. [ECF]. This final motion to dismiss, however, was preceded by a flurry of docket activity.

On December 4, Johnson moved for a preliminary injunction and temporary restraining order seeking to preclude Defendants from taking any retaliatory actions or from interfering with Plaintiff's outgoing legal mail. ECF No. 21. He also sought transfer to a different correctional facility. *Id*. On December 16, Johnson filed a declaration for entry of default against Bloom—at the time, the only remaining defendant to have not filed a motion to dismiss. ECF No. 24. And ten days later, Johnson moved for an extension of time to respond to the Corrections Defendants' motion to dismiss. ECF No. 28. Defendant Bloom responded in opposition to

Johnson's declaration for entry of default on December 31 by explaining that he had until January 6, 2025, to file his response. ECF No. 30. The Court had yet to rule on Johnson's declaration for entry of default against Bloom by the time that Bloom filed his motion to dismiss.

As to Defendant Dobo, on December 23, Johnson filed his brief in opposition to Dobo's motion to dismiss. ECF No. 26. Dobo filed a reply brief six days later on December 31. ECF No. 29. On January 15, 2025, Johnson filed a motion to strike Dobo's reply brief. ECF No. 33. Dobo opposed the motion to strike on January 17, arguing that Johnson's motion to strike should be denied because it was, in effect, a sur-reply, ECF No. 34.

To recap the state of play as it stood at the end of January 2025, Dobo's motion to dismiss was fully briefed pending resolution of the motion to strike; Johnson had yet to oppose the Corrections Defendants' motion to dismiss but had filed a motion for extension; and Johnson had yet to oppose Dr. Bloom's motion to dismiss. Also pending was Johnson's motion for an injunction and temporary restraining order. Following this flurry of activity between mid-November 2024 and mid-January 2025, the cluttered docket in this matter entered a period of quiescence.

On November 11, 2025, action resumed. Bloom, whose motion to dismiss remained unopposed, filed a motion to dismiss Johnson's claims against him for failure to prosecute. ECF No. 46. Instead of opposing Dr. Bloom's motion to dismiss

for failure to prosecute, on December 9, Johnson again moved for an extension, this time seeking 90 additional days to respond to both of Dr. Bloom's motions and Corrections Officers' original motion to dismiss. ECF No. 47. Dr. Bloom responded to Johnson's motion for extension on December 22, 2025. ECF No. 49. The most recent relevant docket activity occurred on January 13, 2026, when the Court, per Judge Haines, denied Johnson's motion for a TRO and preliminary injunction. ECF No. 51.

Which brings us to today. Four primary issues remain. The first is Bloom's motion to dismiss for failure to prosecute. The second, only applicable if the first is denied, is Johnson's latest motion for extension. The third is Johnson's motion to strike Dobo's reply brief in support of his motion to dismiss. The fourth is Dobo's motion to dismiss, which, upon resolution of the motion to strike, will be ripe for adjudication. There are also two pending motions which may be resolved without extensive analysis: Johnson's original motion for extension and his declaration for entry of default.

Addressing these issues seriatim, Bloom's motion to dismiss for failure to prosecute will be denied, ECF No. 46, and Johnson's motion for extension will be granted, though for less than the requested 90 days. Johnson will have a final opportunity to respond to Bloom and Corrections Defendants' original motions to dismiss. ECF Nos. 19, 31. I will deny Johnson's motion to strike Dobo's reply brief,

ECF No. 33, and proceed to grant Dobo's motion to dismiss, ECF No. 17. Johnson's claims against Dobo will be dismissed and he will then have 30 days—the same amount of time he will have to oppose Bloom's and Corrections Defendants' motions to dismiss—to amend his allegations against Dobo. Johnson's original motion for extension will be denied as moot and his declaration for entry of default will be denied.

## III.  Motion to Dismiss for Failure to Prosecute

### a.  Standard of Review

While Federal Rule of Civil Procedure 41(b) permits a District Court to dismiss a plaintiff's case for failure to prosecute, "dismissals with prejudice, or defaults, are drastic sanctions." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir. 1984). To determine whether to grant Bloom's motion, I must weigh six factors: "(1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense." *Id.* at 868.

### b. Discussion

I begin with the party's personal responsibility. Here, Johnson, a *pro se* plaintiff, is responsible for his own failure to oppose Defendant's motions. *See Briscoe v. Klaus*, 538 F.3d 252, 258-59 (3d Cir. 2008) ("[T]he District Court was correct in stating that a *pro se* plaintiff is responsible for his failure to attend a pretrial conference or otherwise comply with a court's orders."). As such, the first factor weighs against Johnson.

The second factor, prejudice to the adversary, weighs against dismissal. "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." *Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 873–74 (3d Cir. 1994) (internal quotation marks and citation omitted). Though Bloom's motion states that "all authority necessary to grant this motion is included herein," ECF No. 46 at 3, Bloom does not claim to be at risk of suffering any prejudice. In an attempt to address this factor, Bloom merely states that Johnson failed to file a timely opposition to Bloom's original motion to dismiss. This averment, standing alone, is insufficient to constitute prejudice. *Cf. Riley v. Sec'y Pennsylvania Dep't of Corr.*, 536 F. App'x 222, 226 (3d Cir. 2013) (finding "at least some prejudice" where plaintiff had failed to comply with multiple orders directing him to respond to a motion to dismiss in a case pending for over three years).

The third factor, history of dilatoriness, also weighs against dismissal. While Johnson's conduct has been far from expeditious, "conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" *Briscoe*, 538 F.3d at 261. Here, Johnson has only a single instance of what may be considered dilatory conduct: his delay in opposing Bloom's motion to dismiss.[6] He has not failed to attend a hearing, follow a court order, or comply with discovery requests. *Cf. Ware v. Rodale Press, Inc.*, 322 F.3d 218, 224 (3d Cir. 2003) (finding that plaintiffs had a history of dilatory conduct where they "failed repeatedly" to provide a damages calculation for the defendant). As such, Johnson's conduct does not demonstrate a history of dilatoriness at this time.

The fourth factor, willful or bad faith conduct, weighs in favor of Johnson. Bloom argues that Johnson knew of his deadline to oppose Plaintiff's motion to dismiss, having filed an opposition brief in response to Dobo's motion to dismiss. ECF No. 26. According to Bloom, because plaintiff's delay was knowing, it was therefore willful and negligent. ECF No. 46 at 3. However, willfulness "generally involves 'intentional or self-serving behavior.'" *Jacobs v. Bayha*, 297 F. App'x 98, 101 (3d Cir. 2008). To knowingly delay proceedings is not necessarily to delay "willfully" or "in bad faith". *See Briscoe*, 538 F.3d at 262 n. 5 ("We note that, even

---

[6] The fact that Johnson also has yet to respond to Corrections Defendants does not constitute dilatory conduct, as his earlier motion for extension, timely filed on December 26, 2024, remains pending.

assuming that Briscoe did not attend the pretrial conference on his own accord, it does not necessarily follow that his purpose was to delay the proceedings.").

It is, in fact, unclear if Johnson's delay can even be considered "knowing." By the time Bloom filed his original motion to dismiss, ECF No. 31, Johnson had already filed a declaration for default judgment against Bloom, ECF No. 24. Bloom filed a response, ECF No. 30, and the Court did not rule on the issue. Johnson had yet to hear from the court regarding whether Bloom's motion to dismiss was valid, or whether default would be entered against him. Without having received guidance from the Court, Johnson remained arguably at sea on how to proceed.[7] As such, Johnson's delay cannot be considered "willful or in bad faith."

The fifth factor, effectiveness of alternative sanctions, weighs against Johnson. *See Briscoe*, 538 F.3d at 262–63 ("[W]here a plaintiff is proceeding pro se, and moreover, is proceeding in forma pauperis, we have upheld the District Court's conclusion that no alternative sanctions existed because monetary sanctions, including attorney's fees, 'would not be an effective alternative.'") (*quoting Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir.2002) (per curiam)). However, this

---

[7] Plaintiff's declaration for entry of default, ECF No. 24, presumably relied upon Rule 12(a)(1)(A)(i)'s 21-day deadline for answering a complaint. However, Bloom had filed a waiver of service, ECF No. 15, meaning the applicable deadline was 60 days following the request for waiver under Rule 12(a)(1)(A)(ii). Bloom filed his motion to dismiss within those 60 days. As such, Johnson's declaration for entry of default will be denied.

factor does not weigh heavily in my analysis. While there are no alternative *sanctions*, there remain alternative means of spurring compliance. For instance, this Court has yet to order Johnson to respond to Defendants' motions to dismiss. In this instance, such an attempt would be proper before resorting to the "extreme measure" of dismissal under Rule 41(b). *Young v. Somerset Cnty. Jail*, 515 F. App'x 107, 108 (3d Cir. 2013) (*quoting Poulis*, 747 F.2d at 867–68).

The final factor, meritoriousness of the claims and defenses, is again indeterminate. Though Bloom's original motion to dismiss raises serious issues, Johnson's failure to respond to the motion makes it difficult to properly assess the meritoriousness of his claims.[8] *See Jones v. Strauch*, No. 1:21-CV-00148, 2021 WL 6052085, at *2-3 (W.D. Pa. Dec. 20, 2021) (finding meritoriousness "impossible to determine" where plaintiff had failed to respond to defendants' motion to dismiss).

In sum, three factors weigh in Johnson's favor, while two are against and one is indeterminate. In light of the Third Circuit's presumption that "doubts should be

---

[8] This point is illustrated by the Court's analysis of Johnson's claims against Dobo, *see infra* at n.10, 13, 14. Johnson's opposition brief clarified which particular theories and causes of action were asserted against Dobo. This clarity is, at present, missing with respect to Bloom.

Further, even if this factor weighed in favor of dismissal, the outcome of my analysis would remain the same. The factors would be evenly split with the fifth factor's significance diminished, and the Third Circuit's preference for resolving cases on the merits would prevail.

resolved in favor of reaching a decision on the merits," *Scarborough v. Eubanks,* 747 F.2d 871, 878 (3d Cir.1984) (citation omitted), I will deny Bloom's motion to dismiss for failure to prosecute. However, Johnson will be ordered to promptly oppose Bloom's original motion to dismiss or be left to rest on his complaint. And this Court will not look fondly upon further delays that are unsupported by excusable neglect.

## IV.    Motion for Extension

Once a deadline has passed, this Court may extend that deadline only upon a showing of excusable neglect. Fed. R. Civ. P. 6(b)(1); *Drippe v. Tobelinski*, 604 F.3d 778 (3d Cir. 2010) ("[A] party must make a formal motion for extension of time and the district court must make a finding of excusable neglect . . . before permitting an untimely motion."). Under *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, a court's determination of excusable neglect must consider "all relevant circumstances surrounding the party's omission." 507 U.S. 380, 395 (1993). Such circumstances include "the danger of prejudice," "the length of delay and its potential impact on judicial proceedings, the reason for the delay . . ., and whether the movant acted in good faith." *Id.*

To begin, I find—and Bloom does not argue to the contrary—that granting an extension will not prejudice defendants. Nor did Johnson act in bad faith. *See supra* at 11. The same finding applies to Johnson's actions vis-à-vis Corrections

14

Defendants, who have not opposed either of Johnson's two motions for extension.[9] I will, therefore, grant Johnson's motion for extension. ECF No. 47.

However, Bloom and Corrections Defendants' motions to dismiss have nonetheless lingered for a significant period. Bloom's original motion to dismiss was filed over a year ago. Corrections Defendants' motion was filed over a month before that. Since Johnson filed his latest motion for extension, over two months have passed. As such, I will grant Johnson only 30 days in which to oppose Bloom's and Corrections Defendants' motions to dismiss, rather than the requested 90 days.

## V. Motion to Strike

I turn next to ECF No. 33, Johnson's motion to strike ECF No. 29, Dobo's reply to Johnson's brief in opposition to Dobo's motion to dismiss. A court may strike under Rule 12(f) pleadings that are "redundant, immaterial, impertinent, or scandalous." However, striking a pleading is a "drastic remedy" and is thus "generally disfavored." *Rivera v. United States*, No. 3:12-CV-1339, 2013 WL 1826396, at *1 (M.D. Pa. Apr. 30, 2013) (citation omitted). Further, given their argumentative nature, "briefs . . . typically will not be considered a 'pleading' which

---

[9] Johnson timely filed his first motion for extension to oppose Corrections Defendants' motion to dismiss on December 26, 2024. ECF No. 28. This motion, like Johnson's declaration for entry of default judgment against Bloom, remained unresolved until today. Given that I will grant Johnson's renewed motion for extension, ECF No. 47, I will deny Johnson's original motion for extension, ECF No. 28, as moot.

is properly the subject of a motion to strike." *Styer v. Frito-Lay, Inc.*, No. 1:13-CV-833, 2015 WL 999122, at *2 (M.D. Pa. Mar. 6, 2015); *see Hudak v. Apostolate for Fam. Consecration, Inc.*, No. 2:22-CV-173, 2022 WL 3716603, at *2 (W.D. Pa. July 18, 2022) ("Briefs are not the proper subject of a Rule 12(f) motion.").

Even if Dobo's reply brief were considered a "pleading" and thus a proper subject for a motion to strike, it is not so "redundant, immaterial, impertinent, or scandalous" as to warrant such a drastic remedy. As such, Johnson's motion to strike will be denied. Having disposed of all pending procedural motions, I now turn to the single substantive motion ripe for adjudication: Defendant Dobo's motion to dismiss.

## VI.    Dobo Motion to Dismiss

### a.  Standard of Review

A motion to dismiss "tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). We ask whether "the facts alleged in the complaint, [] if true, fail to support the . . . claim." *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988).

To decide a motion to dismiss, District Courts "must conduct a two-part analysis." *Edwards v. A.H. Cornell and Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010). First "the factual and legal elements of a claim should be separated." *Id.* (*quoting Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009)). Then, taking all

non-conclusory factual allegations as true, the Court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation omitted). Further, a complaint must contain sufficient factual matter, accepted as true, to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. The complaint must allege sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Johnson is proceeding *pro se*, I must construe his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). This is especially crucial given that Johnson is currently incarcerated. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) ("We are especially likely to be flexible when dealing with imprisoned pro se litigants."). This is because "[s]uch litigants often lack the resources and freedom necessary to comply with the technical rules of modern litigation." *Id.* at 244–45. However, "pro se litigants must still allege sufficient facts in their complaint to support a claim." *Id.* at 245.

### b. Discussion

### i. Sections 1983, 1985, and 1986

I begin with Plaintiff's constitutional claims under Sections 1983, 1985, and 1986. These claims are primarily based on two purported violations of Johnson's constitutional rights. First, Johnson alleges that Reifer ordered Buskirk to stand within earshot of Johnson's cell while Johnson spoke with Dobo, ECF No. 6 ¶ 54; ECF No. 6-1, Ex. E, thereby violating Johnson's Sixth Amendment right to counsel.[10] Second, Johnson alleges that Dobo and Reifer "both arbitrarily refused [] plaintiff bus access to the court," ECF No. 6 ¶ 61, thereby violating Johnson's First Amendment right of access to courts.[11] Both of those theories fail because Johnson has not alleged a conspiracy and because his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Johnson's Sixth Amendment right to counsel claim also fails because he has not alleged Dobo's personal involvement.

---

[10] Johnson grounds this claim not only on an access-to-court theory, *see* n.13, *infra*, but on his right to private communication with counsel under the Sixth Amendment, as recognized in *Jones v. Wetzel*, No. CIV.A. 12-3365, 2013 WL 4675757 (E.D. Pa. Aug. 30, 2013); *Telepo v. Martin*, No. 3:08CV2132, 2009 WL 2476498 (M.D. Pa. Aug. 12, 2009), *aff'd*, 359 F. App'x 278 (3d Cir. 2009); and *Williams v. Price*, 25 F. Supp. 2d 623 (W.D. Pa. 1998).

[11] "[T]he right of access to courts is a 'fundamental right within the protection of the First Amendment[.]'" *Jean v. City of Philadelphia*, 604 F. Supp. 3d 271, 276 (E.D. Pa. 2022) (*quoting Bounds v. Smith*, 430 U.S. 817, 828 (1977) *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996)).

To state a claim in a civil rights action, a defendant "must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). This can be shown through "allegations of personal direction," "participation[,] or actual knowledge and acquiescence." *Id.* Johnson, by alleging that Dobo "arbitrarily refused . . . [P]laintiff bus access to the court," ECF No. 6 ¶ 61, satisfies the "personal involvement" requirement for his First Amendment access to courts claim against Dobo. The same is not true for Johnson's Sixth Amendment claim. Johnson specifically alleges that: Dobo visited Plaintiff at his cell door, *id.* ¶ 55; Buskirk stood by the cell door while they spoke, *id.* ¶ 54; Dobo should not have been allowed at Plaintiff's cell door because he was not on Johnson's visitor list, *id.* ¶ 55; and that different corrections officers gave different explanations for Dobo's visit, *id.* ¶¶ 56-59. None of these allegations suggest that Dobo knew of, or that he acquiesced in, a violation of Johnson's right to counsel. Dobo is not alleged to have known about Buskirk's alleged eavesdropping, nor is he alleged to have discussed any privileged information despite a lack of privacy. As such, Johnson fails to allege that Dobo was personally involved in any violation of Johnson's Sixth Amendment right to counsel.

Further, Johnson's First and Sixth Amendment claims both fail because he has not alleged that Dobo conspired with state actors. Accordingly, Dobo could not have been acting under the color of state law. To state a claim under Section 1983, a

plaintiff must "show that the alleged [constitutional] deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). However, public defenders such as Dobo do not act under color of state law "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Albrecht v. Hamilton*, 233 F. App'x 122, 124 (3d Cir. 2007) (*citing Polk County v. Dodson*, 454 U.S. 312, 318 (1981).

The general rule that public defenders do not act under color of state law is not without exception. One such exception is if a public defender is performing "administrative" or "investigative" functions. *Polk*, 454 U.S. at 325. A second exception exists for instances where a public defender "conspires with a state actor" to deprive the plaintiff of federal rights. *Albrect*, 233 F. App'x at 125 (*citing Tower v. Glover*, 467 U.S. 914 (1984)). Johnson's allegations concerning Dobo do not involve Dobo's performance of any "administrative" or "investigative" functions. As such, to succeed on his Section 1983 claims against Dobo, Johnson must allege that Dobo conspired with state actors to deprive Johnson of a constitutional right.

The same is true of Johnson's Section 1985 claims. Section 1985(2) prohibits "two or more persons" from "*conspir*[*ing*] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, . . . ." (Emphasis added); *Lande v. City of Bethlehem*, 457 F. App'x 188, 193 (3d Cir. 2012). To the extent Johnson is also invoking Section 1985(3), that

section likewise applies only to conspiracies. *See Tarapchak v. Lackawanna Cnty.*, 173 F. Supp. 3d 57, 72 (M.D. Pa. 2016).

To successfully allege a conspiracy, a plaintiff must set forth "allegations of a combination, agreement, or understanding among all or between any of the defendants" to "carry out the alleged chain of events." *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). Even when construed liberally, Johnson makes no such allegations in his complaint. In fact, his complaint does not describe any motivation, agreement or otherwise, for why Dobo would violate his rights.[12] *See Tarapchak*, 173 F. Supp. 3d at 72 ("We have no idea when or why any of these parties would agree to violate [plaintiff's] civil rights."); *Rosembert v. Borough of East Lansdowne*, 14 F.Supp.3d 631, 647–48 (E.D. Pa. 2014) ("A lack of agreement is fatal to the conspiracy claims under section 1983 and section 1985[.]"). This deficiency affects both of Johnson's relevant constitutional theories: right to counsel and access to courts.

---

[12] Dobo and Johnson's briefings both refer to the fact, contained in Plaintiff's Ex. E-1, that Johnson fired Dobo while Dobo was at Johnson's cell. ECF No. 26 ¶ 83; ECF No. 29 at 4. Dobo relies on this fact to argue that "there is no factual basis limiting Johnson's access to court." ECF No. 29 at 4. Dobo does not explain why this conclusion follows from Johnson having expressed his wish to fire his public defender.

Johnson's access to courts claim[13] fails for the additional reason that it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* prohibits civil suits for damages that necessarily imply the invalidity of a standing criminal conviction. 512 U.S. at 486–87. Johnson has not shown that his underlying conviction—the one for which he was "forced to take a guilty plea," ECF 6-1 ¶ 62—has been invalidated. And a claim for violation of one's right of access to courts requires that a plaintiff show "an actual injury—that is, that he lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim." *Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 142 (3d Cir. 2016). Success on Johnson's access to courts claim would necessarily imply the invalidity of his conviction. As such, this claim is barred by *Heck*. *Id.*[14]

---

[13] Johnson's opposition brief, discussing the alleged violation of his Sixth Amendment right to counsel, states that he "does not ground this claim solely on his right to access the court under the Fourteenth Amendment." ECF no. 26 ¶ 94. He does this because he admittedly "cannot show actual injury as required by *Lewis v. Casey*," 518 U.S. 343 (1996). *Id.* I agree with Johnson—the allegations in his complaint fail to show exactly how Johnson was injured by Dobo's actions.

[14] Johnson's complaint claims that defendants also violated his Eighth Amendment rights. Johnson does not, however, state which claims apply to which defendants. In his opposition brief, ECF No. 6 ¶ 2, Johnson clarifies that this claim applies against Dobo, who is purported to have conspired with Corrections Defendants to violate Johnson's Eighth Amendment rights to be free from cruel and unusual punishment. ECF No. 26 ¶ 97. However, as with his Sixth Amendment right to counsel claim, Johnson fails to allege any personal involvement, or a conspiracy between Dobo and other defendants. Thus, Johnson's Eighth Amendment claims against Dobo will be dismissed without prejudice and with leave to amend.

The same is true of Johnson's Sixth Amendment right to counsel claim. In *Telepo v. Martin*, the Court of Appeals for the Third Circuit analyzed whether a Sixth Amendment claim like Johnson's would be barred by *Heck*. 359 F. App'x 278 (3d Cir. 2009). The *Telepo* court first characterized the claim as stemming from the "Sixth Amendment right to assistance of counsel." *Id.* at 280 (*citing United States v. Henry*, 447 U.S. 264, 295 (1980) ("[T]he Sixth Amendment, of course, protects the confidentiality of communications between the accused and his attorney." (Rehnquist, J., dissenting)). The court then reasoned that plaintiff's claim, "if successful, would 'spell speedier release,' and therefore 'lies at the core of habeas corpus.'" *Id.* at 280-81 (*quoting Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)). Thus, Sixth Amendment right to counsel claims, even when challenging the confidentiality of attorney-client communications, are barred by *Heck*.

Finally, because a violation of Section 1986 must be predicated on an underlying violation of Section 1985, *Lande*, 457 F. App'x at 193 (*citing Clark v. Clabaugh*, 20 F.3d 1290, 1296 n. 5 (3d Cir.1994)), Johnson's claims under Section 1986 fall, along with his Section 1985 claims.

Though Johnson's claims against Dobo under Sections 1983, 1985, and 1986 fail at this juncture, I will dismiss them without prejudice and with leave to amend

to the extent he can show that his underlying conviction has been invalidated.[15] If he can show that his conviction has been invalidated, he may also amend these allegations to the extent he can plausibly allege personal involvement and a conspiracy.

### ii. Ineffective Assistance of Counsel

Johnson also brings a Sixth Amendment claim for ineffective assistance of counsel against Dobo. However, like Johnson's Section 1983 access-to-court claim, Johnson's ineffective assistance of counsel claim is barred by *Heck.* To state an ineffective-assistance-of-counsel claim, a plaintiff must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Thus, finding for Johnson would necessarily imply the invalidity of his conviction. As such, Johnson's ineffective-assistance-of-counsel claim will be dismissed without prejudice and with leave to amend to the extent his underlying conviction has been invalidated.

### iii. Remaining Claims

Though Johnson's complaint lists numerous causes of action, he does not specify which claims are alleged against which defendants. Apart from the

---

[15] The Court is not aware of, nor has any party directed the Court to, any post-conviction proceedings attacking Johnson's assault conviction.

constitutional claims addressed above, Johnson also brought claims for violation of the ADA, and state law claims for "negligence, assault and battery, failure to protect, failure to train, failure to supervise, and discipline." ECF No. 6 ¶ 2. Johnson, however, alleges no facts concerning Dobo that would support any of these remaining claims. As such, to the extent Johnson has brought claims against Dobo based on any of these remaining causes of action, they will be dismissed for failure to state a claim.

## Order

AND NOW, this 5th day of March, 2026, for the reasons set forth herein, IT IS ORDERED that:

- Bloom's motion to dismiss for failure to prosecute (ECF No. 46) is DENIED;

- Johnson's declaration for entry of default (ECF No. 24) is DENIED;

- Johnson's December 26, 2024, motion for extension (ECF No. 28) is DENIED;

- Johnson's December 9, 2025, motion for extension (ECF No. 47) is GRANTED IN PART. Johnson will hereby have 30 (thirty) days from the filing of this order to oppose Corrections Defendants' partial motion to dismiss (ECF No. 19) and Bloom's motion to dismiss (ECF No. 31);

- Johnson's motion to strike (ECF No. 33) is DENIED; and

- Defendant Dobo's motion to dismiss (ECF No. 17) is GRANTED. Johnson's claims against Dobo are dismissed without prejudice and with leave to amend. Johnson will hereby have 30 (thirty) days from the filing of this order to amend his pleadings.

Johnson will have 30 (thirty) days from the entry of this order to oppose Bloom's and Corrections Defendants' motions to dismiss and amend his pleadings.

/s/D. Brooks Smith

D. Brooks Smith
United States Circuit Judge
Sitting by Designation
