**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAHQUILL JOHNSON., Plaintiff, | ) | |
| vs. | ) | Civil Action No. 3:24-cv-194<br>Judge D. Brooks Smith<br>Sitting by Designation* |
| LAUREL HARRY, *et al.*, Defendant. | ) | |

**MEMORANDUM and ORDER OF COURT**

Plaintiff Jahquill Johnson filed a *pro se* prisoner's complaint against thirteen defendants, asserting numerous causes of action. There followed a myriad of ebbs and flows in this case, after which I dismissed Johnson's claim against his assigned public defender Ryan Dobo, with leave to amend. I also ordered Johnson to oppose—or choose to leave unopposed—the remaining defendants' motions to dismiss. Johnson chose not to amend his allegations against public defender Dobo, although he did oppose a motion to dismiss by psychologist Dr. Bloom and a motion to dismiss by the named defendants associated with the Pennsylvania Department of Corrections (Corrections defendants).

* By order dated December 19, 2025, the Honorable Michael A. Chagares, Chief Judge of the U.S. Court of Appeals for the Third Circuit, designated and assigned Circuit Judge D. Brooks Smith, pursuant to 28 U.S.C. § 291(b), to hold court in the Western District of Pennsylvania.

Johnson then sought leave to amend his complaint against all parties, and to add additional defendants—but only *after* this Court decides whether to grant the motions to dismiss, which he now opposes.[1] *See* ECF Nos. 19, 31. Because Johnson had an opportunity to oppose the motions to dismiss filed by the Corrections defendants and by Dr. Bloom, those motions are ripe for disposition. Although I dismiss certain of Johnson's claims below, I will grant him thirty days to amend his complaint in accordance with this Memorandum.

## I. Factual Background[2]

For the purposes of a motion filed under Federal Rule of Civil Procedure 12(b)(6), I accept as true all well-pleaded facts in a plaintiff's complaint. *Santiago v.*

---

[1] By Memorandum and Order filed March 5, 2026, ECF No. 54, the claims against Ryan Dobo were dismissed without prejudice and Johnson was granted leave to amend his claims within 30 days from the filing of that order. Thirty days expired on Saturday April 4, 2026, thereby continuing the 30-day period to Monday April 6, 2026. *See* Fed. R. Civ. P. 6(a)(1)(C). No amendment was filed by the close of business on April 6, 2026. "When that 30-day period expired on April 6, the District Court's decision became final." *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 279 (3d Cir. 2016). "By opting to not amend" his claims against Dobo "within the time frame provided" by the March 5, 2026 order, Johnson elected to stand on the allegations of his complaint as they pertained to Dobo, "thereby converting the . . . dismissal into a final order," that is a dismissal with prejudice. *Id.* Nor did Johnson seek leave during that 30-day period for leave to amend the complaint in its totality as to all defendants including Dobo. Accordingly, the subsequent motion to amend as to all parties, which was filed beyond the 30-day period established by the March 5 order, ECF Nos. 58 and 59, cannot revive Johnson's claims against Dobo.

[2] The instant Memorandum and Order marks the second occasion that I have ruled upon motions to dismiss certain claims in Johnson's *pro se* complaint. Certain

*Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010). Relevant here, Johnson alleges that he was an inmate incarcerated at SCI-Houtzdale in its Restricted Housing Unit ("RHU"). ECF No. 6, ¶ 14. At some point (although the exact date does not appear in the record before us), Johnson was charged with assaulting defendant corrections officer (C.O.) Morrison. ECF No. 6 ¶¶ 14, 47, 74.

**a. SCI-Houtzdale Employees Allegedly Abuse Johnson**

On August 15, 2023, Johnson returned to his cell after attending a preliminary hearing on charges he faced arising out of an alleged assault upon C.O. Morrison. A brown bag lunch awaited his return. *Id.* ¶¶ 14-15. As Johnson ate the meal, he experienced a "burning sensation" in his mouth. *Id.* ¶ 17.-19. He "spit-out" a mouthful of food, only to discover the contents included "pieces of 'razor-blades." *Id.* ¶ 19. According to Johnson, the razor blades had been placed in his food by defendant C.O. Buskirk, who was a friend of C.O. Morrison. *Id.* ¶¶ 17-19, 47.

The following day, Johnson filed a grievance with defendant Rebecca Reifer, a facility manager's assistant and grievance coordinator (Assistant Reifer). *Id.* ¶¶24-25. The grievance attached one of the razor blade fragments. *Id.* ¶ 25. Allegedly, Reifer asked Johnson why he hadn't used the razor blade to commit suicide. And as Reifer walked away, she said to Johnson: "I know how to deal with rats." *Id.* ¶ 26.

---

relevant portions of my recitation of the facts and procedural history are borrowed from my prior Memorandum and Order. ECF No. 54.

Johnson alleges that when he met with Assistant Riefer, she allegedly saw the cuts inside his mouth and that she asked him: "are you sure you want to do this[?] [I]t is not going to end well for you Mr. Johnson[.]" *Id.* ¶¶ 27-32.

Johnson then met with defendant Fetsko, a psychologist,[3] to whom he expressed a fear for his life. The psychologist allegedly replied: "You should be," ECF No. 6, ¶34, and proceeded to encourage Johnson to drop the issue, telling him that he had his co-workers' backs, not Johnson's. And Johnson also contends Fetsko addressed him using the "n-word." *Id.* ¶¶ 33-34. Johnson nevertheless recounted to Fetsko the incident involving C.O. Buskirk, after which he was escorted to a "strip module." *Id.* ¶ 36. While Johnson was in the module, another corrections' officer who was in possession of Johnson's grievance told him: "I am here to protect my guys," while admitting: "I know [] Buskirk was the only one in your cell." *Id.* ¶¶ 39-40. Johnson asked the officer to preserve CCTV footage, but he refused, stating "I ain't saving shit, [n-word]." ¶ 42. Johnson was then escorted back to his cell by C.O. Buskirk, who told him: "Did you think they would take your side over mine, [n-word]" *Id.* ¶ 43.

---

[3] Johnson's complaint identifies as a defendant in his caption "PSS Fesko." ECF No. 6 at 1. He alleges in paragraph 10 that "PSS Fesco" is a psychologist. *Id.* ¶ 10. Later, in the complaint, Johnson refers to psychologist "PSS Fetsko." *Id.* ¶34. For consistency, I will refer to PSS Fetsko, which is how the name is spelled in SCI-Houtzdale's response to one of Johnson's grievances. ECF No. 6, ex. E.

Johnson further alleges that his mistreatment by the defendants did not end after these incidents. C.O. Buskirk continued to deliver Johnson's meals, during which he would antagonize Johnson by telling him that he had urinated or masturbated onto his food. *Id.* ¶ 46. Johnson went to multiple employees at SCI-Houtzdale seeking transfer to a housing "pod" which was not under the supervision of C.O. Buskirk. They included defendants Scott Klenfelter, the facility manager (FM), David Close, another FM, Assistant Reifer, licensed psychology manager Sean Bresnahan (Manager Bresnahan), Dr. Bloom, psychologist PSS Olbert, and PSS Fetsko. After Johnson's various requests were denied, he began a hunger-strike. *Id.* ¶¶ 48-49.

**b. Johnson Is Denied Requested Mental Health Care**

Per his complaint, Johnson has a long history of mental health issues. Those issues include diagnoses of anxiety, depression, "PTSD," bipolar II disorder, and antisocial personality disorder. *Id.* ¶ 80. Further, defendants Lucas Malishchak, the director of psychology of the Pennsylvania Department of Corrections (Director Malishchak), Manager Bresnahan, Dr. Bloom, PSS Olbert, PSS Fetsko, FM Close, and C.O. Buskirk were all allegedly made aware of Johnson's diagnoses. *Id.* ¶ 81.

After Johnson began his hunger strike, he went to PSS Olbert seeking help. *Id.* ¶ 50. Allegedly, Olbert's response was to call Johnson the "n-word" and say that he hoped Johnson "get[s] raped." *Id.* ¶ 50. As the hunger strike progressed, Dr.

Bloom, along with Manager Bresnahan, decided to discontinue Johnson's psychiatric medication, purportedly in retaliation for Johnson's hunger strike. *Id.* ¶ 52; ECF No. 6, Ex. D.[4] Johnson's medications, however, were not reinstated after he ended his hunger strike. ECF No. 6 ¶ 52. Later, in January 2024, Dr. Bloom is also alleged to have refused Johnson a psychiatric evaluation because of Johnson's "behavior." *Id.* ¶ 76.

**c. SCI-Houtzdale Employees Allegedly Interfere with Johnson's Right to Confer with Counsel**

In November 2023, Johnson alleges that during a visit from public defender Dobo regarding his assault case, Assistant Reifer instructed C.O. Buskirk to stand within earshot of Johnson's cell while Johnson conferred with counsel through his cell door. *Id.* ¶¶ 53-54. Johnson does not allege in his complaint having discussed any privileged matter with Dobo during his visit. Dobo and Assistant Reifer, however, allegedly refused Johnson's request for transportation to a scheduled court hearing. *Id.* ¶ 61. According to Johnson, their refusal "forced 'him" to take a guilty plea.

Months later, in May 2024, Johnson alleges that C.O. Gallaher restricted his access to his legal mail and that C.O. Gallaher actually confiscated his unopened

---

[4] In deciding a motion to dismiss, I may rely on exhibits attached to the complaint if the complaint's claims are based upon those documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

mail concerning a pending Post-Conviction Relief Act (PCRA) petition. *Id.* ¶ 62. That confiscation, according to Johnson, impeded him from filing a timely response to a *Finley* letter that had been filed by his lawyer.[5] *Id.* ¶ 64. This prompted Johnson to file a grievance. *Id.*

Johnson maintains that, two weeks later, C.O. Gallaher retaliated by "refusing to open [his] mail" unless he agreed to sign off on the earlier grievance *Id.* ¶ 66. Johnson refused. C.O. Gallaher then left the room, leaving behind the "legal mail log." *Id.* at ¶¶ 67-68. Allegedly, this led to Gallaher issuing Johnson a false misconduct report which stated that, despite having received multiple orders to do so, Johnson refused to return the legal mail log. *Id.* ¶ 69. Later, when reviewing a copy of his correspondence history, Johnson saw that the entry for his legal mail had been changed from "confiscated" to "rejected by mail room." *Id.* ¶ 72.

**d. Johnson's Conditions of Confinement**

Finally, Johnson makes several allegations concerning the conditions of his confinement in SCI-Houtzdale's RHU. Johnson was first moved to the RHU on May 4, 2023. *Id.* ¶ 85. While the end date of Johnson's confinement in the RHU does not appear in the record, Johnson alleges that he was scheduled to remain there until

---

[5] A *Finley* letter is filed when "a PCRA petitioner's counsel determines that the case contains no issue of arguable merit." *Sheaffer v. Chesney*, No. CIV.A.02-1294, 2003 WL 22100871, at *2 n.2 (E.D. Pa. Aug. 14, 2003). *See Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

December 22, 2024. *Id.* On February 28, 2025, Johnson filed a Notice of Change of Address, stating that he had been transferred to SCI-Fayette. ECF No. 37. Johnson makes several serious allegations concerning the conditions of his alleged solitary confinement. They include being subjected to artificial light 24 hours a day, seven days a week, being strip and cavity searched when leaving his cell, having extremely limited access to natural light, and being allowed little to no social interaction. ECF No. 6 ¶ 85.

## II. Procedural Background

Johnson filed his *pro se* complaint on August 28, 2024. ECF No 6. He names thirteen defendants and asserts federal claims under 42 U.S.C. §§ 1983, 1985, and 1986, for violations of the First, Sixth, Eighth, and Fourteenth Amendments. In addition, Johnson alleged a violation of the Americans with Disabilities Act, along with state law claims of negligence, assault and battery, "failure to protect, failure to train, failure to supervise, and [failure to] discipline." ECF No. 6 at 1-2, ¶¶ 2-14.

Following nearly two years of on-and-off process, this Court dismissed Johnson's claims against public defender Dobo, granted Johnson leave to amend certain of those claims, and instructed him to file a brief in opposition to the remaining defendants' pending motions to dismiss, ECF Nos. 19, 31. *Johnson v. Harry*, No. 3:24-CV-194, 2026 WL 621345, *9-10 (W.D. Pa. Mar. 5, 2026). Johnson timely filed that brief on March 20, 2026. ECF No. 55-56. Defendant Bloom filed

his reply brief on March 7, 2026, ECF No. 57, while the remaining Corrections Defendants chose not to file a reply brief. On April 16, Johnson filed a motion requesting leave to amend his complaint once the Court resolved the pending motions to dismiss. ECF Nos. 58-59. Bloom, for his part, contested the request for leave to amend. ECF No. 60.

## III. Standard of Review[6]

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that the complaint should contain "enough facts[s] to raise a reasonable expectation that discovery will reveal evidence" to make out the alleged claim. *Id.* at 556. In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. This facial plausibility requirement "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A "blanket assertion" that a plaintiff is entitled to relief will not survive a motion to dismiss. *Twombly*, 550 U.S. at 555 n.3. Nor will "labels and conclusions" satisfy the facial plausibility standard. *Id.* at 555.

---

[6] This Court has jurisdiction to hear Johnson's federal claims under 28 U.S.C. § 1331 and state law claims under 28 U.S.C. § 1367.

Distilling both *Twombly* and *Iqbal*, the Third Circuit has determined that "district courts must conduct a two-part analysis" when presented with a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009). "First, the factual and legal elements of a claim should be separated." *Id.* "The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Because Johnson is proceeding *pro se*, I construe his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) "[P]ro se litigants[,however,] must still allege sufficient facts in their complaint to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. Discussion[7]

### a. Sovereign Immunity

As an initial matter, Johnson's Section 1983 claims for damages brought against defendants in their official capacities are barred by sovereign immunity. *Will*

---

[7] In analyzing Johnson's claims, I will not consider new facts alleged in Johnson's brief in opposition to defendants' motions to dismiss, ECF No. 56. If Johnson wishes the Court to consider those facts, they must be included in an amended complaint. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by

*v. Mich. Dep't of State Police*, 491 U.S. 58, 6671 (1989). State employees sued in their official capacities are immune because "official-capacity suits generally represent only another way of pleading an action" against the state. *Hafer v. Melo,* 502 U.S. 21, 25. (1991) (internal quotation marks and citation omitted); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Accordingly, Johnson's constitutional claims for monetary damages against the defendants in their official capacities will be dismissed with prejudice.

**b. Injunctive Relief**

Official capacity claims requesting prospective injunctive relief, however, are not barred by the Eleventh Amendment. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). A plaintiff has standing to bring such claims if he can show that he faces "continuing, present adverse effects" or a "real and immediate threat of repeated injury." *Id.* at 102 (citation modified). Johnson makes no such showing. In fact, the record shows that Johnson is no longer housed at SCI-Houtzdale. On February 28, 2025, Johnson filed a Notice of Change of Address, stating that he had been transferred to SCI-Fayette. ECF No. 37. Inasmuch as Johnson has been transferred, any amendment to his claim for injunctive relief would be futile.

---

the briefs in opposition to a motion to dismiss." (citation omitted)); *Hammond v. City of Philadelphia*, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001) ("A party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion." (collecting cases)).

Accordingly, Johnson's claims for injunctive relief will be dismissed with prejudice. *Talley v. Wetzel*, 15 F.4th 275, 285 n. 6 (3d Cir. 2021) (recognizing that futility is a basis for denying leave to amend).

**c. First Amendment**[8]

*i. Retaliation*

I turn next to Johnson's First Amendment claims for retaliation. To succeed, Johnson must show "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citation modified).

First, Johnson alleges that Manager Bresnahan, Dr. Bloom, PSS Olbert, and PSS Fetsko discontinued his medication, changed his stability code, and halted his mental health treatment after he began a hunger strike following the alleged razor-blade incident. ECF No. 6 ¶ 52,84. The grievance attached to the complaint as Exhibit D clarifies that Johnson claims the discontinuance of medical care was in retaliation for Johnson's hunger strike. Ex. D.

---

[8] No defendant has raised an affirmative defense based upon qualified immunity to any of Johnson's claims. Because the "burden of pleading a qualified immunity defense rests with the defendant," I do not consider such immunity at this stage of the proceedings. *Thomas v. Independence Twp.*, 463 F.3d 285, 293 (3d Cir. 2006).

Assuming that a hunger strike by a prisoner constitutes protected activity for purposes of a First Amendment retaliation claim,[9] I conclude that Johnson has sufficiently alleged adverse action and that the word "retaliation" sufficiently implies a causal link between his hunger strike and the cessation of treatment. *Mitchell*, 318 F.3d at 530. Whether Johnson may succeed on the merits is far from clear given his failure to sufficiently plead facts as to the timing of the razor-blade incident, of his hunger strike, and the disruption in mental health treatment regimen. Accordingly, Johnson's First Amendment retaliation claim based on the cessation of his medications and mental health treatment because he engaged in a hunger strike may proceed.

Johnson next alleges that, in retaliation for filing a grievance against C.O. Gallaher, Gallaher refused to give Johnson his mail and issued a false misconduct charge against him. ECF No. 6 ¶¶ 63-69. An alleged false misconduct charge in response to the filing of a grievance "implicates conduct protected by the First Amendment." *Mitchell v. Horn*, 318 F.3d at 530. Johnson's use of the word "retaliation" further "implies a causal link" between his grievance and Gallaher's

---

[9] The Third Circuit has yet to address precedentially whether or when hunger strikes are covered by the First Amendment. *See Thomas v. May*, 2024 WL 522576, at *2 (D. Del. Feb. 9, 2024) (noting the lack of controlling case law before concluding that it was not "clearly established" that a prisoner's participation in a hunger strike is protected by the First Amendment).

refusal to deliver his mail and the false misconduct charge. *Id.* Accordingly, Johnson's First Amendment retaliation claim against Gallaher may proceed.

To the extent Johnson sought to assert a First Amendment retaliation claim against any other defendant, such claims will be dismissed with prejudice because Johnson has not alleged anyone's "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

*ii. Access to Courts*

As discussed in my previous decision dismissing Johnson's claims against public defender Dobo, Johnson's First Amendment access to courts claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see Johnson*, 2026 WL 621345, at *18. An access to courts violation requires showing an "actual injury—that is, that [the plaintiff] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim." *Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 142 (3d Cir. 2016). Success on that claim here would undermine Johnson's underlying conviction and thus, under *Heck*, cannot proceed. Johnson's Sixth Amendment right to counsel claim fails for the same reason. *Johnson*, 2026 WL 621345, at *19.Because Johnson cannot show the invalidity of his criminal conviction, there is no need to allow

amendment of either his First Amendment access to courts claim or his Sixth Amendment access to counsel claim.[10]

**d. Eighth Amendment**

*i. Use of Force and Deliberate Indifference*

The Eighth Amendment protects prisoners from cruel and unusual punishment. In particular, the use of force is prohibited when applied "maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6, 9 (1992). Defendant C.O. Buskirk's alleged action of hiding razor blades in Johnson's food clearly meets this standard. There can be no legitimate penological justification for such acts and this Eighth Amendment claim against C.O. Buskirk may proceed.

Things are more complicated in the medical context. "A 'failure to provide adequate care ... [that] was deliberate, and motivated by non-medical factors' is actionable under the Eighth Amendment, but 'inadequate care [that] was a result of an error in medical judgment' is not." *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir.

[10] Johnson's complaint names Assistant Reifer as a defendant and alleges that she was involved in depriving him of his right of access to the courts and to counsel under the First and Sixth Amendments, respectively. Because these claims fail under *Heck*, they also fail against Assistant Reifer. Furthermore, because Johnson's allegations involving Reifer are limited to these claims, there is no other basis for holding Reifer liable under § 1983. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (reiterating that "personal involvement in the alleged wrongdoing" is required for liability under § 1983). Accordingly, Johnson's claim(s) against Assistant Reifer will be dismissed with prejudice.

2016) (quoting *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)). To establish a violation of this right, a plaintiff must allege "(i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). As discussed, *supra*, Johnson's complaint, construed liberally, alleges that Johnson has a serious medical need for mental health care. *See* ECF No. 6 ¶¶ 80, 82.

"Typically, we have let medical-care claims proceed when care was all but absent." *DiFraia v. Ransom*, 171 F.4th 622, 629 (3d Cir. 2026). And while we "disavow any attempt to second-guess the propriety or adequacy of [a] particular course of treatment," that remains true only so long as that treatment "remains a question of sound professional judgment." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Liberally construed, Johnson's complaint pleads sufficient facts to state an Eighth Amendment claim against Manager Bresnahan, Dr. Bloom, PSS Olbert and PSS Fetsko for deliberate indifference to a serious medical condition, i.e., his mental health. Given that Johnson initiated a hunger-strike before his mental health treatment was "abruptly halted," Johnson may not be able to adduce the evidence necessary to prevail on this claim. But on this record, the Eighth Amendment claim against Manager Bresnahan, Dr. Bloom, PSS Olbert, and PSS Fetsko may proceed.

Johnson appears to allege that Laurel Harry, the Secretary of the Pennsylvania Department of Corrections, Director Malishchak, FM Klenfelter, and FM Close violated his Eighth Amendment rights by "allowing" Manager Bresnahan, Dr. Bloom, PSS Olbert, and PSS Fetsko to discontinue his medication, drop his stability code and deny him mental health treatment. ECF No. 6 ¶ 89. Johnson fails to allege, however, that Secretary Harry, Director Malishchak, and FMs Klenfelter and Close were personally involved in any decision relating to his mental health treatment regime. "An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (cleaned up). Accordingly, Johnson's Eighth Amendment claim against Secretary Harry, Director Malishchak, and FMs Klenfelter and Close will be dismissed.

Finally, to the extent Johnson attempts to base an Eighth Amendment claim on the verbal abuse he received from any corrections officer, such a claim fails. "[V]erbal abuse alone cannot be the basis for an Eighth Amendment claim." *Brown v. Victor*, 337 F. App'x 239, 241 (3d Cir. 2009).

*ii. Failure to Protect*

I turn next to Johnson's allegation that FMs Klenfelter and Close, Assistant Reifer, Manager Bresnahan, Dr. Bloom, PSS Olbert, and PSS Fetsko refused Johnson's requests for a transfer to a "pod" not monitored by C.O. Buskirk. ECF No.

6 ¶ 48. We construe this allegation liberally, as we must, and conclude that it asserts an Eighth Amendment failure to protect claim. Such a claim requires that Johnson allege facts showing that (1) his condition of incarceration objectively poses a substantial risk of serious harm; and (2) "the prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 833–34 (1994). This latter subjective knowledge standard requires the prisoner to show "that prison officials actually knew of and disregarded constitutional violations." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)). In *Thomas*, we observed that the showing a prisoner must make under *Farmer* is consistent with the requirement that each defendant must be personally involved in the alleged wrongdoing. 948 F.3d 133, 138 (3d Cir. 2020).

With these requirements in mind, I conclude that the refusal to transfer Johnson upon his request following the alleged razor-blade incident does not sufficiently allege the subjective component of an Eighth Amendment failure to protect claim for any defendant other than PSS Olbert. According to his complaint, Johnson specifically sought help from PSS Olbert, ecf no. 6, ¶50, and his attached grievance demonstrates that, as part of that conversation, he notified her of his concern that the staff were failing to "address[] [his] mental health trauma after being exposed to . . . the arbitrary acts of [] Buskirk who put razors in [his] food and still passed [his] tray out . . . ." *Id.* ex. C., at 1. Thus, Johnson's failure to protect claim

will be dismissed as to FMs Klenfelter and Close, Assistant Reifer, Manager Bresnahan, Dr. Bloom and PSS Fetsko.

Finally, I turn to defendant C.O. Morrison, the alleged victim of Johnson's assault. Morrison figures in only two allegations. First, Johnson claims that Morrison and Buskirk "walk the compound together" and are "close friends." ECF No. 6 ¶ 47. Second, Johnson alleges that C.O. Morrison retaliated against him by approaching him while he was in his cell and stated: "Once you get out of here, I'm going to fuck you over." *Id.* ¶ 74. The motion to dismiss by the Corrections defendants addresses only the former allegation of friendship between C.O. Buskirk and C.O. Morrison. ECF No. 19, at 8.

Mere friendship is insufficient to constitute personal involvement in any conduct that would have offended Johnson's constitutional rights. *Evancho*, 432 F.3d at 353. And C.O. Morrison's threat likewise does not rise to the level of a § 1983 deprivation of a constitutional right. *See Matthews v. Norristown State Hosp.*, 528 F. App'x 115, 119 (3d Cir. 2013) ("[M]ere threatening language does not amount to a constitutional violation.") (citing *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir.1987)). As such, I will dismiss all claims against C.O. Morrison.

*iii. Conditions of Confinement*

Johnson's complaint contains five allegations relating to his conditions of confinement in the RHU and his solitary confinement. ECF No. 6 ¶¶ 85-89. These

allegations seem to hint at an Eighth Amendment claim based on the solitary confinement aggravating his mental health diagnoses. *See Clark v. Coupe*, 55 F.4th 67, (3d Cir. 2022). The gravamen of Johnson's complaint is focused on C.O. Buskirk's placement of razor-blades in his food and the alleged mistreatment that followed as he tried to obtain relief through the inmate grievance system, instead allegedly suffering retaliation (a false misconduct and alleged deliberate indifference to his medical needs). I thus conclude that Johnson's five allegations in paragraph 85 to 89 fail to set forth sufficient facts to state an Eighth Amendment claim challenging his assignment to solitary confinement and the exacerbation of his psychiatric condition. The claim will be dismissed.

**e. Fourteenth Amendment**

Johnson's complaint states only that he is "claiming the right to have "Equal protection of the Laws including the Due process clause under the Fourteenth (14th) Amendment." ECF No. 6, ¶2. I am unable to discern from this lone averment the factual basis for an equal protection or a due process claim. Without more, and mindful that the Supreme Court has instructed that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision," *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see Porter*

*v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 447-48 (3d Cir. 2020), I will dismiss any Fourteenth Amendment equal protection or due process claim.

**f. Sections 1985 and 1986**

In the preliminary statement of Johnson's civil rights complaint, he cites to 42 U.S.C. §§ 1983, 1985, and 1986. The complaint, however, fails to set forth any allegations beyond the "blanket assertion" that he is entitled to relief under sections 1985 and 1986. *Twombly*, 550 U.S. at 555 n.3. Without more, the §§ 1985 and 1986 claims must be dismissed.

**g. Americans with Disabilities Act**

Because Johnson does not explicitly allege retaliation based upon an alleged disability, I construe his ADA claim to rest on ADA Title II. *See* ECF No. 56, ¶71 (Johnson's opposition brief stating intent to pursue relief under Title II). Individual defendants are not eligible to be sued under Title II of the ADA. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002). However, "Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, [thus]Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 159 (2006). In other words, an ADA claim asserted against the defendants in their official capacity may be viable.

Under Title II, a plaintiff "must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the

benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018). "'[M]ental illness qualifies as a disability under' the ADA." *Williams v. Secre. Pa. Dep't of Corrs.*, 117 F.4th 503, 528 (quoting *Disability Rts. N.J., Inc. v. Comm'r, N.J. Dep't of Hum. Servs.*, 796 F.3d 293, 301 (3d Cir. 2015)). And Johnson has alleged that he suffers from severe mental illness and that Manager Bresnahan, Dr. Bloom, PSS Olbert, and PSS Fetsko "abruptly halted" his mental health treatment after he went on a hunger strike. *Id.* ¶¶49, 52, 80, 84.

Yet Johnson's prayer for relief seeks compensatory damages, thereby requiring that he show that the Commonwealth "acted with deliberate indifference to the risk of an ADA violation.". *Haberle*, 885 F.3d at 181. That means that the remedy of compensatory damages "is not available absent proof of 'intentional discrimination.'" *Id.* (internal citation omitted). To adequately plead deliberate indifference, Johnson "must allege (1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge." *Id.* (internal quotation marks and citation omitted).

Johnson's complaint fails to allege that the defendants, in their official capacities, were aware that stopping his mental health treatment when he was on a hunger strike "made it substantially likely that [he] would be denied [his] federally protected rights under the ADA." *Id.* Accordingly, I conclude that Johnson's

complaint falls short of setting forth sufficient factual averments to establish an ADA claim against the Commonwealth.[11] This claim will be dismissed against all defendants.[12]

### h. State Law Claims

#### *a. Assault and Battery*

Johnson next asserts a claim for assault and battery under Pennsylvania law. "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Defendants do not contest whether Johnson has alleged assault and battery against C.O. Buskirk, and I agree that this claim against him is supported by the allegations. However, to the extent this claim is brought against other defendants, no averments are made in the complaint that support such

---

[11] As explained above, *see* § IV(d)(iii), the gravamen of Johnson's complaint has centered upon the placement of razor blades in his food and the events that transpired thereafter. We need not, therefore, without some factual development, construe averments of his confinement in the RHU and in solitary confinement, together with the harms that they pose for prisoners with psychiatric disorders, as an ADA claim based on his solitary confinement.

[12] Johnson's ADA claim will be dismissed with prejudice, except as to defendants Bresnahan, Bloom, Olbert, and Fetsko who are specifically identified as involved in the decision to halt his mental health treatment once he started a hunger strike.

claims. Johnson has alleged no other intentional menacing or use of force by another defendant.

*b. Negligence*

Johnson also states that he is asserting a claim for negligence under Pennsylvania law. ECF No. 6, ¶3. And he includes among his "state law claims" a "failure to protect, failure to train, failure to supervise, and discipline." *Id.* Once again, Johnson fails to allege facts to support any of these claims or to identify which defendant is allegedly liable based on such conduct. Accordingly, these claims will be dismissed.

## V. Motion To Amend

With some hesitation, I will grant Johnson leave to amend his complaint consistent with this Memorandum. I do so, noting that Johnson's motion for leave to amend also requests leave to "add defendants." ECF No. 59 at 1. Johnson fails to name a single defendant he wishes to add. Nor does he specify any claims he seeks to bring against such a defendant. Without the information necessary to evaluate Johnson's request under Federal Rules of Civil Procedure 19 or 20, I will deny his motion to amend to the extent it seeks leave to join defendants.

The undersigned has now given careful attention – and devoted considerable time – to resolving the issues raised in two motions to dismiss. I have faithfully applied the foregoing standard which governs my review of *pro se* pleadings. But

the requirement that I examine Johnson's complaint liberally does not constitute a wholesale abrogation of the Federal Rules of Civil Procedure. Nor does it require me to ignore the policy concerns of Rule 1 for "the just, speedy, and inexpensive determination of every action."

The series of events giving rise to the claims that are before this court began just over three years ago. Despite that passage of time, this matter remains in the pleading stage. Litigation delay disadvantages all parties. With that in mind, I urge plaintiff to focus on those claims that he considers his legally strongest, and to pursue them with dispatch.

## VI. Conclusion

In accordance with the foregoing, an appropriate order follows.

**Order**

AND NOW, this 16th day of September, 2026, for the reasons set forth herein, IT IS ORDERED that the Motions to Dismiss, ECF Nos. 19, 31, are DENIED IN PART and GRANTED IN PART as follows:

- Johnson's constitutional claims for monetary damages against the Corrections defendants in their official capacities are DISMISSED WITH PREJUDICE.
- Johnson's claims against the Corrections defendants in their official capacities for injunctive relief are DISMISSED WITH PREJUDICE.
- The motions to dismiss Johnson's First Amendment retaliation claim against Manager Bresnahan, Dr. Bloom, PSS Olbert, and PSS Fetsko based on the termination of his medications and mental health treatment after he began a hunger strike are DENIED.
- The Corrections defendants' motion to dismiss, ECF No. 19, Johnson's First Amendment retaliation claim against C.O. Gallaher for filing a false misconduct charge is DENIED. To the extent there is any First Amendment retaliation claim against any other defendant, such claims are DISMISSED WITH PREJUDICE.

- Johnson's claim for access to courts under the First Amendment against any of the defendants is DISMISSED WITH PREJUDICE.
- Johnson's claim for access to counsel under the Sixth Amendment against any of the defendants is DISMISSED WITH PREJUDICE.
- The motion to dismiss Johnson's claim for unconstitutional use of force under the Eighth Amendment is DENIED IN PART as to C.O. Buskirk, and the motion is GRANTED IN PART as to all other defendants.
- The motions to dismiss Johnson's Eighth Amendment claim of deliberate indifference to his mental health needs are DENIED as to Manager Bresnahan, Dr. Bloom, PSS Olbert, and PSS Fetsko. The motion to dismiss the claim of deliberate indifference to Johnson's mental health needs as to Secretary Harry, Director Malishchak, and FMs Klenfelter and Close is GRANTED and such claims will be DISMISSED WITH PREJUDICE.
- Johnson's Eighth Amendment claim based on a failure to protect him by moving him off Buskirk's pod is DISMISSED against all defendants except PSS Olbert.

- Johnson's claims for unconstitutional conditions of confinement under the Eighth Amendment based upon his confinement in the RHU are DISMISSED.
- Johnson's claims under the Fourteenth Amendment are DISMISSED.
- Johnson's claims under 42 U.S.C. §§ 1985 and 1986 are DISMISSED.
- The Title II ADA claim against all defendants in their personal capacities is DISMISSED WITH PREJUDICE. Johnson's claim under Title II of the ADA against defendants Manager Bresnahan, Dr. Bloom, PSS Olbert, and PSS Fetsko in their official capacities is DISMISSED. The Title II ADA claim against all other defendants in their official capacities is DISMISSED WITH PREJUDICE.
- Johnson's assault and battery claim will be DISMISSED WITH PREJUDICE against all defendants except C.O. Buskirk.
- Johnson's state law claims of negligence, failure to protect, failure to train, failure to supervise and discipline are DISMISSED.
- Johnson's April 16 Motion for Leave to File Amended Complaint (ECF No. 58) is GRANTED IN PART AND DENIED IN PART. Johnson's Motion is DENIED as to public defender Ryan Dobo and any claims against Ryan Dobo are DISMISSED WITH PREJUDICE. Johnson's request to join additional defendants is DENIED. Johnson's Motion is

GRANTED IN PART, and he is granted thirty (30) days from the filing date of this order to amend his complaint consistent with this Memorandum.

/s/D. Brooks Smith
D. Brooks Smith
United States Circuit Judge
Sitting by Designation